IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 18-cr-00266-PAB-5

UNITED STATES OF AMERICA,

    Plaintiff,

v.

5.  JEREMIAH U. SERR,

    Defendant.

## ORDER

This matter is before the Court on defendant Jeremiah Serr's Motion for New Trial [Docket No. 281] pursuant to Fed. R. Crim. P. 33.

## I. BACKGROUND

On September 13, 2018, defendant was indicted, along with several other individuals, for conspiring to distribute and possessing with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a) and 846. Docket No. 101. As relevant here, Count One of the second superseding indictment alleged that

> [f]rom on or about October 15, 2016, through on or about May 12, 2018, within the District of Colorado and elsewhere, the defendants [Joanna Zarate-Suarez, Edwin Roman-Acevedo, Christina Fitzgerald, Omar Humberto Gonzalez-Hernandez, Jeremiah Serr] and others both known and unknown to the Grand Jury, did knowingly and intentionally conspire to distribute and to possess with intent to distribute a quantity of a Controlled Substance, namely more than 500 grams of a mixture and substance containing a detectable amount of Methamphetamine and more than 50 grams of Methamphetamine, and did so with interdependence.

Docket No. 101 at 1-2.

Defendant was tried with one of his alleged coconspirators, Omar Humberto Gonzalez-Hernandez, in February 2019. Docket No. 260. After the close of the government's case, defendant moved for judgment of acquittal under Fed. R. Crim. P. 29. Docket No. 267 at 2. The Court denied the motion. *Id.* On March 5, 2019, the jury convicted defendant on both counts charged in the second superseding indictment. Docket No. 274 at 2-3. The jury also made special findings on the verdict form that defendant had (1) conspired to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, and (2) possessed with the intent to distribute 50 grams or more of actual methamphetamine. *Id.* at 2. On March 19, 2019, defendant moved for a new trial on Count One of the second superseding indictment pursuant to Fed. R. Crim. P. 33. Docket No. 281. The government filed a response to defendant's motion on March 28, 2019, Docket No. 292, to which defendant replied on April 3, 2019. Docket No. 294.

## II. ANALYSIS

Fed. R. Crim. P. 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Although a trial court is afforded discretion in ruling on such a motion, and is free to weigh the evidence and assess witness credibility, a motion for new trial is regarded with disfavor and should only be granted with great caution." *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999). Thus, the power to grant a new trial

on the ground that the jury's verdict is contrary to the weight of the evidence "should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994) (internal quotation marks omitted).

Defendant raises three arguments in favor of a new trial. First, he contends that the trial evidence demonstrated the existence of three separate conspiracies rather than the single conspiracy charged in the indictment. Docket No. 281 at 2. Second, he argues that the jury failed to follow the Court's legal instructions on multiple conspiracies. *Id.* Third, he asserts that "there was a prejudicial and fatal variance between the indictment and the proof at trial." *Id.* The Court finds that defendant's second and third arguments are merely variations on the first. *See United States v. Hill*, 786 F.3d 1254, 1266 (10th Cir. 2015) ("We treat a conspiracy variance claim as an attack on the sufficiency of the evidence supporting the jury's finding that each defendant was a member of the same conspiracy." (internal quotation marks omitted)).[1] Accordingly, the Court will consider (1) whether defendant's conviction of the single conspiracy alleged in Count One of the indictment was contrary to the weight of the evidence, and (2) whether, assuming a variance occurred, the variance substantially prejudiced defendant. *See Hill*, 786 F.3d at 1266 (outlining two-step inquiry).

### A. Evidence Supporting Defendant's Conspiracy Conviction

To convict a defendant of a conspiracy crime, the government must prove: "(1)

---

[1]Defendant does not explain how the jury disregarded or misunderstood the Court's instruction on multiple conspiracies. Presumably, defendant believes the jury must have misunderstood the instruction because it failed to acquit defendant of the crime charged in Count One. *See* Docket No. 281 at 3, ¶ 9.

3

an agreement by two or more persons to violate the law; (2) knowledge of the objectives of the conspiracy; (3) knowing and voluntary involvement in the conspiracy; and (4) interdependence among co-conspirators." *United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011). A variance occurs where "an indictment charges a single conspiracy but the evidence presented at trial proves only the existence of multiple conspiracies." *United States v. Carnagie*, 533 F.3d 1231, 1237 (10th Cir. 2008). "Distinguishing between a single, large conspiracy and several smaller conspiracies is often difficult . . . ." *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009). In reviewing a jury's determination of the issue, "a focal point of the analysis is whether the alleged coconspirators' conduct exhibited interdependence." *Id.* (internal quotation marks omitted).

Interdependence exists if the "conspirators intended to act together for their shared mutual benefit within the scope of the conspiracy charged." *United States v. Hamilton*, 587 F.3d 1199, 1208 (10th Cir. 2009) (internal quotation marks and emphasis omitted). This requirement is met if the "alleged coconspirators were united in a common unlawful goal or purpose" and the "defendant's activities facilitated the endeavors of another alleged coconspirator or facilitated the venture as a whole." *Id.* at 1209 (internal quotation marks and emphasis omitted). A single conspiracy does not become multiple conspiracies simply because it involves "a number of separate transactions," *United States v. Brewer*, 630 F.2d 795, 799 (10th Cir. 1980) (internal quotation marks omitted), or "two or more phases or spheres of operation." *United States v. Harrison*, 942 F.2d 751, 756 (10th Cir. 1991) (internal quotation marks and

emphasis omitted). Nor is it significant that "members come and go." *United States v. Fishman*, 645 F.3d 1175, 1190 (10th Cir. 2011); *see also United States v. Brewer*, 630 F.2d 795, 800 (10th Cir. 1980). Instead, the determination of whether a single conspiracy exists hinges on whether "there is sufficient proof of mutual dependence and assistance." *Fishman*, 645 F.3d at 1190 (internal quotation marks and emphasis omitted). This showing may be made by circumstantial evidence. *Caldwell*, 589 F.3d at 1329. Moreover, a single act may be enough to demonstrate interdependence. *Id.*; *see, e.g.*, *Hamilton*, 587 F.3d at 1209 (rejecting argument that the defendant's "one-time agreement to assist in a one-time collection of money" was insufficient to show that the defendant had rejoined the conspiracy).

The Court finds that there was ample trial evidence supporting defendant's conviction of the single conspiracy charged in the indictment. As an initial matter, defendant does not appear to challenge the sufficiency of the evidence establishing his participation in a drug distribution conspiracy in October 2016. *See* Docket No. 281 at 2 (stating that "the evidence proved the existence of three separate conspiracies"). At trial, one of defendant's alleged co-conspirators, Christina Fitzgerald, testified that she contacted Joanna Zarate-Suarez, another alleged co-conspirator, in 2016 to obtain two pounds of methamphetamine for a buyer in Virginia. According to Ms. Fitzgerald, Ms. Zarate-Suarez arranged to have an individual, "Mia," whose full name was Jeremiah, transport the drugs from Denver to Kansas City where Ms. Fitzgerald and the Virginia buyer, C.K., would meet Mia to complete the transaction. Ms. Fitzgerald testified that Mia was supposed to be driving a Honda. Mia, however, never showed up. Ms.

Fitzgerald testified that she was informed by Ms. Zarate-Suarez that Mia had been stopped by the police en route to Kansas City.

The government presented evidence that defendant, whose first name is Jeremiah, was arrested in Chapman, Kansas on October 17, 2016 after a Kansas Highway Patrolman discovered 433.5 grams of methamphetamine in defendant's car during a traffic stop. Defendant was driving a Honda. During the traffic stop, defendant told the patrolman that he was driving from Denver to "Tampeka, Kansas" to visit a family member. The patrolman testified that he is not aware of any town called Tampeka, Kansas. Defendant later pled guilty to state charges for distribution and possession of methamphetamine. On May 11, 2018, defendant was arrested at a home belonging to Ms. Zarate-Suarez.

This evidence supports a finding that defendant knowingly conspired to distribute methamphetamine in 2016. *See United States v. Dewberry*, 790 F.3d 1022, 1031 (10th Cir. 2015) (reasoning that defendant's "participation in transactions involving large amounts of [cocaine] powder ma[de] his knowledge of a broader venture [to distribute crack cocaine] readily subject to an inference" (internal quotation marks and brackets omitted)); *Hamilton*, 587 F.3d at 1209 (holding that defendant's agreement to participate in one-time collection of money was sufficient to support conspiracy conviction where his conduct was "calculated to . . . meaningfully contribute to the success of [the] drug operation"); *United States v. Delgado-Uribe*, 363 F.3d 1077, 1083 (10th Cir. 2004) (listing, among the factors that may be considered in drawing an inference of a conspiracy, "a defendant's association with co-conspirators," "participation in drug transactions," and "knowledge of and control over drugs").

The next issue is whether defendant was part of the broader conspiracy alleged in the indictment. Defendant argues that the evidence adduced at trial proved the existence of three separate conspiracies: (1) an October 2016 conspiracy to distribute two pounds of methamphetamine; (2) a November 2016 conspiracy to distribute three pounds of methamphetamine; and (3) an April 2018 conspiracy to distribute six pounds of methamphetamine. Docket No. 281 at 2. He relies on Ms. Fitzgerald's testimony that there was no open-ended conspiracy to distribute methamphetamine and that defendant was not involved in the transactions that took place in November 2016 and April 2018. Docket No. 281 at 2-3. However, the government presented evidence showing that the October 2016, November 2016, and April 2018 transactions were part of the single conspiracy alleged in the indictment. Each transaction involved the same general group of individuals and had, as its objective, the sale of methamphetamine in Virginia. Ms. Fitzgerald testified that she knew Ms. Zarate-Suarez in prison and reached out to her in 2016 to purchase two pounds of methamphetamine for a buyer in Virginia, C.K. According to Ms. Fitzgerald, methamphetamine was worth significantly more in Virginia than in Colorado. She testified that, as part of her agreement with Ms. Zarate-Suarez, she told C.K. an inflated price for the methamphetamine so both she and Ms. Zarate-Suarez would make money from the sale. After defendant was apprehended with the methamphetamine in October 2016, Ms. Fitzgerald and Ms. Zarate-Suarez met in Burlington, Colorado to complete the sale.

Ms. Fitzgerald testified that the following month, she contacted Ms. Zarate-Suarez about purchasing an additional supply of methamphetamine for C.K. This time, Ms. Fitzgerald and Ms. Zarate-Suarez agreed that Ms. Fitzgerald would fly to Denver

with C.K.'s girlfriend, S.M., to purchase the drugs. After arriving in Denver, Ms. Fitzgerald and S.M. drove around with Ms. Zarate-Suarez and Omar Gonzalez-Hernandez looking for a hotel room. While S.M. was outside of the car, Ms. Fitzgerald, Ms. Zarate-Suarez, and Mr. Gonzalez-Hernandez discussed robbing S.M. The robbery occurred later that night. According to Ms. Fitzgerald, Edwin Roman-Acevedo and two other individuals took S.M. to buy cigarettes. After S.M. left the hotel room, Ms. Zarate-Suarez directed Ms. Fitzgerald to take all of S.M.'s money and belongings and leave the hotel. Ms. Zarate-Suarez and Mr. Gonzalez-Hernandez picked Ms. Fitzgerald up and took her to a Denver hotel where Ms. Zarate-Suarez divided S.M.'s money between herself, Ms. Fitzgerald, Mr. Roman-Acevedo, and the two other men who had taken S.M. to buy cigarettes and had beaten her up. Mr. Roman-Acevedo then drove Ms. Fitzgerald and a half-pound of methamphetamine that Ms. Zarate-Suarez had fronted Ms. Fitzgerald back to Virginia in a rental car. On the way, they were stopped by the police for driving over the speed limit. In an effort to conceal the drugs from the police, Ms. Fitzgerald dissolved the methamphetamine in a jug of water. Following the incident, Ms. Zarate-Suarez directed Ms. Fitzgerald to salvage as much of the drugs as she could and then send her the money from the sale.

Ms. Fitzgerald's drug distribution activities stopped in December 2016 when she self-surrendered to federal prison for an earlier supervised release violation. Ms. Fitzgerald was released from prison twelve months later. In April 2018, C.K. reached out to her about purchasing six pounds of methamphetamine. Ms. Fitzgerald got back in contact with Ms. Zarate-Suarez and the two made a plan for completing the sale. It was agreed that Ms. Fitzgerald would fly to Denver to pick up the drugs and then drive

8

to meet C.K. somewhere between Denver and Virginia. Ms. Zarate-Suarez and Mr. Gonzalez-Hernandez picked Ms. Fitzgerald up from the Denver airport on May 8, 2018. On May 9, 2018, Ms. Fitzgerald and Ms. Zarate-Suarez drove to Burlington, Colorado to meet C.K., who did not show. C.K. made contact later in the day and agreed to meet Ms. Fitzgerald in Bennett, Colorado on May 10, 2018 to complete the transaction. Ms. Zarate-Suarez, Ms. Fitzgerald, and Mr. Roman-Acevedo were en route to Bennett, Colorado on May 10, 2018 when they were arrested by police.

Ms. Fitzgerald testified at trial that the October 2016, November 2016, and April/May 2018 transactions represented separate agreements, rather than a single, ongoing conspiracy, to distribute methamphetamine. As indicated above, however, a single conspiracy does not become multiple conspiracies merely because it involves a series of separate transactions or a lapse in time between transactions. *See Caldwell*, 589 F.3d at 1330-31; *Brewer*, 630 F.2d at 799. Rather, the critical inquiry is "whether such activities constituted essential and integral steps toward the realization of a common, illicit goal." *Brewer*, 630 F.2d at 799. The trial evidence supported a conclusion that all three transactions were carried out in furtherance of a single criminal objective – the distribution of methamphetamine in Virginia. Not only was there continuity between the transactions in terms of the individuals involved, the role played by each participant, and the type and quantity of drugs being distributed, but the evidence also showed that each of the alleged coconspirators stood to benefit financially from the scheme. *See Caldwell*, 589 F.3d at 1332 ("[I]n the profit-driven world of illicit drugs, the fact that several individuals are in an economically symbiotic relationship may demonstrate that transactions among them are in pursuit of mutual

9

benefit."). For example, Ms. Fitzgerald established through her testimony that, rather than sell methamphetamine directly to C.K. or another Virginia buyer, Ms. Zarate-Suarez sold the drugs to Ms. Fitzgerald knowing that she would re-sell them to C.K. at a higher price in order to take a cut of the proceeds. Ms. Fitzgerald further testified that Ms. Zarate-Suarez gave each participant in the November 2016 robbery of S.M., including Ms. Fitzgerald, a portion of the stolen money. Critically, there is no evidence that any of the alleged coconspirators were ever operating at cross purposes. *See Harrison*, 942 F.2d at 756 ("The goals of all the participants need not be congruent for a single conspiracy to exist, so long as their goals are not at cross purposes." (internal quotation marks and emphasis omitted)). This case is therefore distinguishable from cases in which the evidence established multiple conspiracies. *See, e.g.*, *Caldwell*, 589 F.3d at 1331 (finding that a reasonable jury could not have concluded that a later transaction constituted a continuation of an earlier conspiracy where a year had passed since the earlier conspiracy, during which time the alleged coconspirators had "buil[t] separate illicit businesses, wherein each obtained marijuana and sold it to customers"); *Carnagie*, 533 F.3d at 1240 (holding that the evidence established the existence of multiple conspiracies where there was "no showing of mutual dependence" between the different groups of alleged coconspirators and at least two of the alleged coconspirators were, at one point, "in direct competition for prospective borrowers").

The evidence also supported a finding that defendant was part of the single conspiracy alleged in the indictment. As discussed above, a reasonable jury could infer that defendant attempted to deliver methamphetamine as part of a conspiracy, was aware of the broader conspiracy based on the large quantity of methamphetamine he

had agreed to transport, and maintained an ongoing association with the other alleged coconspirators. *See Dewberry*, 790 F.3d at 1030; *Delgado-Uribe*, 363 F.3d at 1083. Absent evidence that defendant took affirmative steps to withdraw from the conspiracy, the mere fact that he participated in one transaction and did not engage in any drug distribution activities after his arrest does not preclude a finding that he was part of the broader conspiracy. *See Hamilton*, 587 F.3d at 1209 (rejecting argument that one-time incident was insufficient to tie defendant to ongoing conspiracy); *Brewer*, 630 F.2d at 800 (fact that defendant "ceased his activities early in the scheme [did] not establish the existence of multiple conspiracies" where the defendant did not take any affirmative action to withdraw from the conspiracy); *see also United States v. McIntosh*, 514 F. App'x 783, 791 (10th Cir. 2013) (unpublished) (explaining that, because the defendant had "not pointed to any affirmative acts by which he withdrew from the conspiracy, the law treat[ed] him as a member of the conspiracy even after his arrest").

For the foregoing reasons, the Court is unable to conclude that the jury's verdict on Count One was contrary to the weight of the evidence.

### B. Prejudice

Even if the Court were to find that the evidence presented by the government resulted in a variance from the crime charged in the indictment, defendant is entitled to a new trial only if he can show that the variance was substantially prejudicial. *See Carnagie*, 533 F.3d at 1240 ("A variance . . . is only reversible error . . . if it affects the substantial rights of the accused." (internal quotation marks omitted)).

"A defendant's substantial rights are not prejudiced merely because the

defendant is convicted upon evidence which tends to show a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment." *Harrison*, 942 F.2d at 758. However, a "variance can be prejudicial by either failing to put the defendant on sufficient notice of the charges against him, or by causing the jury to determine the defendant's guilt by relying on evidence presented against other defendants who were involved in separate conspiracies (the so-called 'spillover effect')." *Hill*, 786 F.3d at 1266 (internal citation omitted); see also *Carnagie*, 533 F.3d at 1241 (characterizing the latter form of prejudice as "guilt transference," wherein "the evidence adduced against co-conspirators involved in separate conspiracies [is] more likely than not imputed to the defendant by the jury in its determination of the defendant's guilt"). Defendant does not contend that he lacked sufficient notice of the charges against him, but focuses instead on the issue of evidentiary spillover. He argues that the government "piled on evidence of a brutal robbery and a car chase with bags of drugs flying out the car window as evidence against Mr. Serr," thereby "invit[ing] the jury to consider this evidence as probative of Mr. Serr's involvement." Docket No. 281 at 4.

Courts consider three factors in determining whether a prejudicial spillover occurred (the "*Carnagie* factors"): "(1) whether the separate conspiracies affected the jury's ability to evaluate each defendant's individual actions, (2) whether the variance caused the jury to misuse evidence, and (3) the strength of the evidence underlying the conviction." *Hill*, 786 F.3d at 1266.

### *1. Jury's Ability to Evaluate Each Defendant's Individual Actions*

Although there is no "absolute rule" for determining prejudice under this factor, the Tenth Circuit has indicated that "the greater the number of conspiracies proved and defendants tried, the higher the probability of prejudice." *Hill*, 786 F.3d at 1267 (citing *Kotteakos v. United States*, 328 U.S. 750, 772 (1946)). In *Hill*, the Tenth Circuit held that the "numerosity" presented in that case – five conspiracies proved, three defendants tried together, and eight individuals indicted – did not create a sufficient risk of prejudice to warrant reversal of the defendant's conspiracy conviction. *See* 786 F.3d at 1268. The court contrasted the facts in the case with those presented in *Kotteakos* and *Carnagie*. *See Hill*, 786 F.3d at 1268. In *Kotteakos*, the Supreme Court reversed a conviction where thirty-two individuals were indicted, nineteen defendants were tried together, and the evidence established eight separate conspiracies rather than the single, global conspiracy charged in the indictment. *See* 328 U.S. at 753, 766.

The facts presented in this case are closer to *Hill* than *Kotteakos*. Assuming defendant's characterization of the evidence is correct, three conspiracies were proved, two defendants were tried together, and a total of five individuals were indicted on Count One. If anything, this ratio is less prejudicial than the ratio in *Hill*, which the Tenth Circuit found insufficient to warrant reversal of the defendant's conviction. *See Hill*, 786 F.3d at 1268; *see also Carnagie*, 533 F.3d at 1242 (finding the risk of prejudice insufficient to warrant reversal of the defendant's conviction where three conspiracies were proved, three defendants were tried together, and thirty-four individuals were indicted). Two other factors weigh against a finding of prejudice. First, as in *Carnagie*,

13

the evidence presented in this case was "not so intricate as to render the jury unable to segregate the evidence associated with each defendant's individual actions." 533 F.3d at 1242 (internal quotation marks omitted). The evidence offered by the government showed three distinct transactions, each one involving only a small group of people. *See id.* at 1242 (fact that "the evidence offered tended to prove the existence of three separate and distinct conspiracies" undermined a finding of prejudice). Second and relatedly, defendant was alleged to have participated in only one transaction, which occurred at the beginning of the time period charged in the indictment. *See Hill*, 786 F.3d at 1268 (reasoning that "the jury would have [had] no difficulty compartmentalizing evidence bearing on [the defendant's] guilt" where the defendant was alleged to have been "involved in one discrete event"). Given these facts, the first *Carnagie* factor does not support a conclusion that any variance was prejudicial.

### 2. Misuse of Evidence

The second *Carnagie* factor also does not support reversal of defendant's conviction. This factor assesses the risk that the variance resulted in "confusion among members of the jury concerning the legal limitations on the use of certain evidence." *Carnagie*, 533 F.3d at 1243 (internal quotation marks omitted). Issues that bear on this determination include (1) whether the evidence was so complex as to prevent the jury from compartmentalizing the evidence against each defendant, (2) whether the transactions alleged to be part of the broader conspiracy were similar in nature to the transaction in which the defendant was involved, and (3) whether the jury actually demonstrated that it could compartmentalize the underlying counts. *See Hill*, 786 F.3d

14

at 1268-69.[2] As discussed above, the first of these considerations weighs against defendant. The government's evidence concerning the conspiracy consisted primarily of the testimony of Ms. Fitzgerald, who talked about three distinct transactions occurring during different time periods and involving only a small group of individuals. The evidence was thus not so complex as to prevent the jury from separating out the evidence bearing on defendant's guilt. As to the second factor, although the robbery of S.M. was of a different nature than the conduct in which defendant participated, the remaining transactions comprising the alleged conspiracy were of the same general character – all involved the transportation and sale of large quantities of methamphetamine. Moreover, any risk of prejudice created by the robbery evidence was mitigated by the Court's instruction that the jury was to "separately consider the evidence against each defendant on each count and return a separate verdict for each defendant." Docket No. 271 at 17; *see also Carnagie*, 533 F.3d at 1243 (holding that the district court's limiting instruction to "independently consider whether the Government has proven the guilt of each defendant on each offense charged" minimized any possibility of prejudice). Finally, the jury did not have the opportunity to show that it could compartmentalize the evidence against each defendant because defendant was charged with possession of methamphetamine only in connection with the October 2016 transaction in which he directly participated. This consideration is therefore neutral. *See Hill*, 786 F.3d at 1269 (finding that the third factor was "at best neutral" for the defendant where the nature of the charges did not give the jury the

---

[2]In *Carnagie*, the Tenth Circuit appeared to resolve these issues in its analysis of the first *Carnagie* factor. *See* 533 F.3d at 1242-43.

"opportunity to show its ability to compartmentalize the evidence").

For these reasons, the second *Carnagie* factor does not establish a prejudicial variance.

### 3. Strength of the Evidence Underlying Defendant's Conviction

The final *Carnagie* factor requires the Court to consider (1) whether, excluding the evidence of a broader conspiracy, there was sufficient evidence to convict defendant of conspiring to distribute or to possess with the intent to distribute methamphetamine in October 2016; and (2) whether the evidence of the smaller conspiracy in which defendant was implicated "was so much weaker than the evidence introduced regarding the larger conspiracy that a substantial, prejudicial spillover must have resulted." *Hill*, 786 F.3d at 1269-70 (explaining two-part framework for assessing the "strength" of the evidence under the third *Carnagie* factor).

As discussed above, the jury heard sufficient evidence to convict defendant of conspiring to distribute methamphetamine in October 2016. The Court concludes that this evidence was not so much weaker than the evidence of the larger conspiracy as to create a substantial risk of evidentiary spillover. While the government presented direct evidence establishing defendant's possession of a large quantity of methamphetamine in 2016, much of the evidence tending to prove the larger conspiracy was circumstantial. When considered in light of all the evidence presented at trial, the evidence proving defendant's involvement in the 2016 conspiracy was therefore "strong enough to minimize the danger of prejudicial spillover." *Hill*, 786 F.3d at 1270 (holding that the evidence of the defendant's involvement in the smaller conspiracy was strong

enough to minimize the danger of prejudice notwithstanding the fact that there was direct evidence tying the other co-conspirators to various crimes while the evidence establishing defendant's involvement in the robbery was largely circumstantial).[3]

For the foregoing reasons, defendant has not shown that there was a variance between the conspiracy alleged in the indictment and the conspiracy established at trial. Even if there was such a variance, defendant has failed to demonstrated that it substantially prejudiced his right to a fair trial. As a result, defendant's request for a new trial under Fed. R. Crim. P. 33 will be denied. *See United States v. McClatchey*, 217 F.3d 823, 831 (10th Cir. 2000) ("A new trial is only necessary . . . if the variance substantially prejudiced the defendant's right to a fair trial.").

## III. CONCLUSION

Wherefore, it is

**ORDERED** that defendant Jeremiah U. Serr's Motion for New Trial [Docket No. 281] is **DENIED**.

---

[3]Defendant does not use his multiple conspiracies argument to challenge the jury's finding as to drug quantity. *See Dewberry*, 790 F.3d at 1029-30 (noting that a "defendant may challenge whether the evidence is sufficient . . . to support the jury's determination as to any element of a charge, including its drug quantity determination"). However, any such argument would be unavailing. The government presented evidence that defendant had 396.1 grams of actual methamphetamine in his possession when he was stopped by the Kansas Highway Patrol on October 17, 2016. Thus, even excluding the evidence of the November 2016 and April 2018 transactions, the evidence was sufficient to support the jury's determination that defendant conspired to distribute or to possess with the intent to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Docket No. 274 at 2.

DATED April 30, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge